Mark G. Tratos (Bar No. 1086)
tratosm@gtlaw.com
Donald L. Prunty (Bar No. 8230)
pruntyd@gtlaw.com
Ronald D. Green Jr. (Bar No. 7360)
greenro@gtlaw.com
GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

Counsel for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| FilmKraft Productions India PVT Ltd., <br><br> Plaintiff, <br><br> v. <br><br> Spektrum Entertainment, Inc., Raj Shah, and Bina Shah, <br><br> Defendants. | Case No. 2:08-cv-01293-JCM-GWF <br><br> **EMERGENCY MOTION FOR AN ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT OF COURT FOR THEIR VIOLATIONS OF THE PRELIMINARY INJUNCTION** |

Plaintiff Filmkraft Productions India PVT Ltd. ("Filmkraft") hereby makes this Emergency Motion for an Order to Show Cause regarding: (1) why Defendants Spektrum Entertainment, Inc. ("Spektrum"), Raj Shah, and Bina Shah (collectively, the "Defendants") should not be held in contempt for numerous recent, intentional violations of the Preliminary Injunction entered by this Court that forbade them from interfering with the release of the film *Kites*; (2) why this Court should not enter sanctions against Defendants, including the striking of Defendants' Answer, the dismissal of Defendants' Counterclaims, and the entry of a Permanent Injunction and Default Judgment against Defendants; (3) why Defendants and their members, managers, employees, partners, attorneys, affiliates, successors, and/or agents, including Happy Hours Productions, LLC ("Happy Hours") should not be estopped from claiming any ownership in the copyright for the *Kites* motion picture; (4) why this Court should not order Defendants to pay Plaintiff sanctions in the form of a compensatory award; and (5) why this Court should not order Defendants to pay Plaintiff's

reasonable attorneys' fees and costs incurred in connection with the filing of the instant action, enforcing the Preliminary Injunction and the Federal Rules of Civil Procedure and the orders of this Court, and filing the instant Motion.

This Motion is made on an emergency basis because the release of the *Kites* motion picture is imminent with the Hindi version scheduled to release on May 21, 2010 and the English version scheduled to release on May 28, 2010. Nevertheless, an agent for Defendants filed a lawsuit seeking to enjoin the release of the film on May 18, 2010. Defendants' agent additionally published a notice in the largest film publication in India attempting to stop release of the film. Without immediate action from this Court, Defendants will continue their impermissible attempts to halt release of the film in clear derogation of the orders of this Court.

This Motion is made pursuant to Rule 65 of the Federal Rules of Civil Procedure and is based upon the attached memorandum of points and authorities, the papers and pleadings on file herein, and any oral argument that this Court may allow.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Throughout this case, Defendants have ignored the orders of this Court and the Federal Rules of Civil Procedure. Their misconduct has led Plaintiff to file several motions to compel, a motion for an order to show cause regarding why Defendants should not be held in contempt, and a motion for preliminary injunction. Plaintiff prevailed on each of the motions to compel and on the motion for preliminary injunction. Due to numerous delays and extensions requested by Defendants, the motion for an order to show cause is still pending before this Court.[1]

As this Court knows, the Preliminary Injunction prohibited "Defendants and their members, managers, employees, partners, attorneys, affiliates, successors, and/or agents" from "interfer[ing] with the release, marketing, and distribution of the movie *Kites*." (Preliminary Injunction [Docket # 126], at 3.) Defendants have not heeded this Court's order. Defendants and/or their agents are

---

[1] Plaintiff Filmkraft believes that each request for extension of time on that Motion, all of which have been granted and most of which have not been opposed, was simply an attempt by Defendants to delay resolution of this matter in order to facilitate their attempt to violate the Preliminary Injunction and interfere with release of the movie *Kites*.

responsible for at least two recently filed lawsuits in India seeking to block the release and distribution of *Kites*. Moreover, Defendants' agent posted a notice in an Indian film magazine stating that Defendants' agent was seeking to prevent the exhibition and release of *Kites*.

Defendants' most recent actions in derogation of the Preliminary Injunction are, in a sense, a continuation of their bad acts since the inception of this lawsuit. However, Defendants' recent actions in attempting to prevent *Kites* release are their most egregious, as they are blatantly and intentionally violating a specific order of this Court. As such, Plaintiff requests that this Court immediately issue an Order to Show Cause regarding why Defendants should not be held in contempt of Court.[2]

## II. STATEMENT OF RELEVANT FACTS

### A. Nature of the Case.

Plaintiff Filmkraft is a motion picture company located in India. When it was preparing to commence the production of its first American feature, *Kites*, which would be shot in New Mexico, Las Vegas, and Los Angeles, it contracted with Spektrum, a Nevada corporation, to act as line producer for the film. (See Filmkraft/Spektrum Contract, attached hereto as **Exhibit 1**.) Under the contract, Filmkraft was to pay Spektrum a fixed amount for its work. Filmkraft additionally advanced money to Spektrum for the services Spektrum provided. In order to account for the advances, Spektrum was to keep invoices, receipts, and other documents verifying its expenses and payments to vendors. Such records were not only required under the contract but necessary to claim a substantial rebate of costs from the State of New Mexico. Filmkraft made multiple attempts to get Spektrum to produce these records to no avail. When Filmkraft eventually had its New Mexico counsel request those documents via correspondence, Spektrum abandoned its responsibilities, breaching its agreement with Filmkraft, and absconded with all of the documentation.

---

[2] Special procedural protections apply in cases in which contempt by a party occurs outside of the court's presence. See International Union UMWA v. Baatwell, 512 U.S. 821, 823 (1994). Specifically, a motion requesting a finding of contempt should first request that the court first issue an order to show cause why the parties in question should not be held in contempt. See Florida Ass'n for Retarded Citizens v. Bush, 246 F.3d 1296, 1298 (11th Cir. 2001). Therefore, since Defendants' contempt occurred outside of this Court's presence, Filmkraft requests that the Court issue an order to show cause (by a date certain to be determined by this Court) regarding why Defendants should not be held in contempt.

Filmkraft filed the instant suit in September of 2008. Discovery has been closed since September of 2009. Defendants took no discovery of their own, repeatedly failed to attend their properly noticed depositions, provided late and entirely insufficient responses to Plaintiff Filmkraft's written discovery, and have still not provided documents that they admit are in their possession that go to the very heart of this lawsuit.

B.   **Defendants' Relationship with Happy Hours.**

While Filmkraft contracted Spektrum to act as line producer for *Kites*, Spektrum apparently sub-contracted with a related entity, Happy Hours, a Nevada limited liability company, to provide line production services in New Mexico. (See Happy Hours/Spektrum Contract, attached hereto as **Exhibit 2**.) Filmkraft has no agreement or relationship with Happy Hours except with regard to the limited issue of procuring a tax rebate from the State of New Mexico. (See Memorandum between Plaintiff and Happy Hours, attached hereto as **Exhibit 3**.) As Happy Hours acted as Spektrum's agent in fulfilling Spektrum's responsibilities to Filmkraft in New Mexico, Spektrum is liable for Happy Hours' activities under the Filmkraft/Spektrum agreement.

Happy Hours is inextricably intertwined with Defendants. The Nevada Secretary of State currently lists Defendant Raj Shah as the sole manager of Happy Hours. (See Nevada Secretary of State Printout for Happy Hours, attached hereto as **Exhibit 4**.) Defendant Bina Shah, Raj Shah's spouse, was one of the managers of Happy Hours when it was formed and remains an officer of Defendant Spektrum. (See Initial List of Manager or Members and Resident Agent of Happy Hours, LLC, attached hereto as **Exhibit 5**; Nevada Secretary of State Printout for Spektrum, attached hereto as **Exhibit 6**.) Thus, not only is Happy Hours an agent of Spektrum, Happy Hours shares a unity of interest with each and every one of the Defendants.

C.   **Plaintiff's Motion for Preliminary Injunction.**

*Kites* is now set to open on May 21, 2010 in India, while the English language version is slated to open on May 28, 2010. (See Moviewood.net Article re: *Kites*, attached hereto as **Exhibit 7**.) *Kites* will release in over sixty (60) countries and on over 2,300 screens worldwide, a record for an Indian film. (See Wikipedia.org Entry for *Kites*, attached hereto as **Exhibit 8**.)

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

- 4 -

As the release date for the movie approached, Plaintiff Filmkraft received correspondence from Defendants' Indian counsel on March 17, 2010. (See March 17, 2010 Correspondence from Ashok M. Saraogi, attached hereto as **Exhibit 9**.) In that correspondence, Defendants impliedly threaten to block the release of the *Kites* motion picture unless Plaintiff paid Defendants 9.75 crores (approximately $2,000,000) by March 24, 2010. (See id. at ¶ 16.) Plaintiff Filmkraft viewed this correspondence as blackmail. Defendants were aware that any delay regarding the resolution of the parties' dispute could cause further release complications for the film.

However, Defendants did not even give Plaintiff until March 24, 2010 to comply with their attempts to extort monies out of Plaintiff. On March 22, 2010, Defendants sent correspondence to several television networks promoting *Kites* in India, including Sony Entertainment Television and Viacom. (See March 22, 2010 Correspondence from Ashok M. Saraogi, attached hereto as **Exhibit 10**.) In that letter, Defendants, through their affiliate and agent, Happy Hours, falsely claimed a copyright in *Kites* and threatened to sue the recipients of the letter for copyright infringement if they promoted *Kites*. (See id.) Defendants make this false claim for copyright ownership even though:

- Spektrum merely acted as line producer on *Kites*, engaging in tasks such as procuring food for the crew and renting cars for the production. It was in no way involved in any creative activity which might entitle it to claim copyright.
- The Contract specified that Spektrum would have no copyright in the film. (See Contract, at ¶ 14.) As such, Happy Hours, Spektrum's agent, could certainly possess no copyright in the film.
- Filmkraft has no agreement or relationship with Happy Hours except with regard to the limited issue of processing the New Mexico tax rebate. (See Memorandum between Plaintiff and Happy Hours Productions, LLC.)

With the release of *Kites* rapidly approaching, Filmkraft filed an Emergency Motion for Temporary Restraining Order and Preliminary Injunction on March 29, 2010 [Docket # 109], asking that this Court enjoin Defendants from interfering with the release of the movie *Kites*. On March 31, 2010, this Court held that Plaintiff Filmkraft was likely to succeed on the merits of its claims and issued a Temporary Restraining Order that prohibited "Defendants and their members, managers, employees, partners, attorneys, affiliates, successors, and/or agents" from "interfer[ing] with the release, marketing, and distribution of the movie *Kites*." (Temporary Restraining Order [Docket # 113], at 3.) The Motion for Preliminary Injunction was subsequently fully briefed, and the

Temporary Restraining Order was converted to a Preliminary Injunction on April 13, 2010 [Docket # 126].

### D. Defendants' Violations of the Preliminary Injunction.

The entry of a Preliminary Injunction against them did not deter Defendants from attempting to prevent the release of *Kites*. Indeed, since the Preliminary Injunction was issued, Defendants have been engaged in a concerted and very public effort to interfere with the release of *Kites*.

In an attempt to hide the fact that Defendants were going to interfere with the release of *Kites*, Defendants' first attempt to block the release of the film was done through a third party. Specifically, Happy Hours purportedly assigned its copyright in the movie *Kites*, which as discussed, it does not actually possess, to Laxmi Narayan Prasad. (See Prasad Lawsuit, attached hereto as **Exhibit 11**.) Mr. Prasad then filed suit against, among others, Filmkraft and Happy Hours for copyright infringement. (See id.) Happy Hours subsequently submitted a statement to the Indian court stating that Filmkraft was infringing Mr. Prasad's copyright and asked that Filmkraft be enjoined from releasing *Kites*. (See Happy Hours Statement, attached hereto as **Exhibit 12**.)

Filmkraft was never served with the Indian complaint filed by Mr. Prasad and was not aware of the litigation until an Indian judge issued an injunction improperly compromising Filmkraft's ability to release *Kites*. After Filmkraft learned of the lawsuit and the injunction against it, Filmkraft was forced to take the matter before an Indian appeals court. Fortunately, the Indian appellate court ruled that the release of *Kites* should proceed. (See Indian Court Order, attached hereto as **Exhibit 13**.)

After their attempts to circumvent this Court's Preliminary Injunction failed, Defendants opted just to use Happy Hours, admittedly their agent, to interfere with release of *Kites*. The May 15, 2010 issue of Film Information, a prominent Indian periodical about the Indian movie industry, prominently promoted the release of *Kites* on its cover. (See May 15, 2010 Film Information, attached hereto as **Exhibit 14**.) In that issue of Film Information, Defendants caused Happy Hours to issue a "Public Notice" regarding Filmkraft and *Kites*. (See id.) That "Public Notice" reads:

. . .

. . .

> This is to inform people at large that my client, M/s. **Happy Hours Productions has filed a civil suit against Filmkraft Productions Private Limited** and their Directors individually, (2) Adlabs Films, (3) Reliance Big Pictures, (4) All Distributors and (5) All Exhibitors **to prevent exhibition and release of the movie KITES** hence people at large should note the same.
>
> Dated this day of May 14, 2010
>
> sd/-
> Mr. Ankur Rajput
> Advocate for Happy Hours Productions

(Id., emphasis added.)

On May 18, 2010, Defendants, through Happy Hours, actually did file suit in an Indian court, requesting that the court enjoin Filmkraft from releasing *Kites*. (See Indian Lawsuit, attached hereto as **Exhibit 15**.) Happy Hours' Indian lawsuit is based upon Filmkraft's agreement with Spektrum that is already the subject of the instant litigation. In fact, that contract is an exhibit to the complaint Happy Hours filed in India. (See id.) In other words, Happy Hours' alleged but invalid grievances could and should have been brought in this already existing lawsuit.

Happy Hours Indian lawsuit falsely alleges that Happy Hours is owed over $6 million for its work on *Kites* and that Filmkraft promised not to release the film until it paid Happy Hours that money.[3] (See id.) Based upon facts gleaned from the instant litigation, Happy Hours' claims make no sense. After all, Happy Hours has no contractual relationship with Filmkraft that would entail Filmkraft owing Happy Hours money. Filmkraft's contractual relationship was with Spektrum, and Spektrum sub-contracted with Happy Hours. Moreover, none of these claims were brought by either Spektrum or Happy Hours in the instant lawsuit; instead, they were fabricated as Defendants attempt to block the release of *Kites* on the eve of its actual release. Happy Hours' lawsuit is prohibited by the Preliminary Injuction and possesses no merit.

Defendants' actions, through its agent Happy Hours, are in direct contravention of the Preliminary Injunction entered by this Court. Throughout the entirety of this matter, Defendants have repeatedly ignored the orders of this Court and the Federal Rules of Civil Procedure and, through their recent actions in India, have demonstrated that they will not hesitate to do so each and

---

[3] None of the Defendants or Happy Hours have ever made this claim in the present suit.

every time they have an opportunity to do so. As such, Plaintiff Filmkraft requests the immediate issuance of an order to show cause regarding why Defendants should not be held in contempt of court.

### III. LEGAL ARGUMENT

#### A. Standard of Review.

Rule 65 of the Federal Rules of Civil Procedure permits this Court to enter temporary restraining orders and preliminary injunctions. To obtain a temporary restraining order and a preliminary injunction, a plaintiff must show that: (1) it will suffer irreparable harm if injunctive relief is not granted; (2) it is likely to succeed on the merits; (3) the balance of equities tips in favor of the moving party; and (4) granting the injunction is in the public interest. See Stanley v. University of Southern California, 13 F.3d 1313, 1319 (9th Cir. 1994). In this instance, the Court found that Filmkraft met each of these elements and issued a preliminary injunction.

Violations of court orders, including temporary restraining orders and preliminary injunctions, are considered contempt of court and entitle the plaintiff to damages and other relief. See U.S. Philips Corp. v. KBC Bank N.V., 590 F.3d 1091, 1095 (9th Cir. 2010); Commodity Futures Trading Com'n v. Alliance Dev. Co., 2007 WL 1059574, at *1 (D. Nev. 2007). The moving party must demonstrate by clear and convincing evidence that the contemnor violated the court's order. In Re Dual-Deck Video Cassette Recorder Antitrust Litig., 10 F.3d 693, 695 (9th Cir.1993) (citing Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc., 689 F.2d 885, 889 (9th Cir.1982)); Balla v. Idaho State Bd. of Corrections, 869 F.2d 461, 466 (9th Cir.1989)). The burden then shifts to the respondents to demonstrate that they have performed "'all reasonable steps within their power to insure compliance' with the court's orders." Stone v. City and County of San Francisco, 968 F.2d 850, 856 (9th Cir.1992), cert. denied, 506 U.S. 1081, 113 S.Ct. 1050, 122 L.Ed.2d 358 (1993) (quoting Sekaquaptewa v. MacDonald, 544 F.2d 396, 404 (9th Cir.1976)).

A contempt sanction is considered civil if it "is remedial, and for the benefit of the complainant." International Union, UMWA v. Bagwell, 512 U.S. 821, 827-28 (1994). A contempt fine is considered civil and remedial if it either "coerce[s] the defendant into compliance with the court's order, [or] ... compensate[s] the complainant for losses sustained." United States v. United

Mine Workers, 330 U.S. 258, 303-304 (1947). In deciding whether to impose a civil contempt sanction, a district court should consider the following factors: the harm from non-compliance; the probable effectiveness of the sanction; the contemnor's financial resources and the burden the sanctions may impose; and the contemnor's willfulness in disregarding the court's order. Id., 330 U.S. at 303-304.

### B.     Defendants Are in Contempt.

Defendants Spektrum, Raj Shah, and Bina Shah have clearly and intentionally violated the Preliminary Injunction issued by this Court. That Injunction prohibited "Defendants and their members, managers, employees, partners, attorneys, affiliates, successors, and/or agents" from "interfer[ing] with the release, marketing, and distribution of the movie *Kites*." (Preliminary Injunction, at 3.) Following the entry of that Injunction and as the release of the film approached, as discussed above, Defendants used their agent, Happy Hours, a Nevada limited liability company, to: (1) falsely allege in a lawsuit that Filmkraft was infringing upon the copyright for the movie *Kites*; (2) issue public notice in a film periodical that Happy Hours was suing Filmkraft to prevent the release and distribution of *Kites*; and (3) file suit in India seeking to block the release of *Kites*.

Defendants will likely argue that they are not responsible for Happy Hours' actions. However, Happy Hours is unquestionably their agent, and the Preliminary Injunction bars Defendants' agents from interfering with the release, marketing, and distribution of *Kites*. Furthermore, it is well-settled that a principal is liable for the acts of his agent. See Myers v. Bennett Law Offices, 238 F. Supp. 2d 1196, 1202 (D. Nev. 2002); Lear v. Bishop, 476 P.2d 18, 21 (Nev. 1970); Forrester v. Southern Pac. Co., 134 P. 753, 764-65 (Nev. 1913). Thus, Defendants cannot hide behind Happy Hours. They are liable to Plaintiff for their violations of the Preliminary Injunction.

### C.     Defendants Should Be Sanctioned.

Defendants must be sanctioned for their willful violation of this Court's Preliminary Injunction. Plaintiff Filmkraft requests that this Court consider not only monetary sanctions but more severe sanctions, up to and including (1) the striking of Defendants' Answer; (2) the dismissal of Defendants' Counterclaims; (3) the issuance of Default Judgment against Defendants; (4) the

issuance of a Permanent Injunction against Defendants; and (5) forbidding Defendants and their members, managers, employees, partners, attorneys, affiliates, successors, and/or agents, including Happy Hours, from claiming any ownership in the copyright to *Kites*.

          1.    *Filmkraft Is Being Irreparably Harmed by Defendants' Non-Compliance.*

As noted above, Filmkraft is preparing for the biggest movie premiere in the history of Indian film. Plaintiff is releasing a movie in over sixty (60) countries on over 2,300 screens. *Kites* is Filmkraft's first release in the United States. If Defendants are successful in interfering with the release of the film, Filmkraft will suffer severe economic damage. Perhaps even more importantly, it will suffer great injury to its reputation.

Plaintiff has been advertising May 2010 as the release date for *Kites* for months. Failure to open on that date would irreparably injure the public's perception of Filmkraft and its ability to open a movie, which would cause great prejudice to Plaintiff. This is particularly so in the United States. After all, Filmkraft has never released a film in the United States before and is attempting to gain a positive reputation from movie studios, distributors, and audiences around the country. To permit Defendants to interfere with the release of *Kites* with no justification could harm Filmkraft's reputation and relationship with Western studios and audiences before Filmkraft even releases its first movie in this country.

          2.    *Severe Sanctions Are Necessary.*

While Plaintiff does request that this Court levy monetary sanctions against Defendants, Filmkraft does not believe monetary sanctions are sufficient. During her deposition, Bina Shah testified that Defendants had no real money or assets to speak of and were living off of monies provided to them by Raj Shah's family. (See Deposition of Bina Shah, at pp. 35 - 37, attached hereto as **Exhibit 16**.) Thus, if Defendants are only sanctioned monetarily, they will likely just ignore the sanction and not pay it.

As such, Plaintiff Filmkraft asks that this Court impose harsher sanctions on Defendants as identified above. Dismissal of counterclaims and striking the Answer is warranted when a party has repeatedly failed to abide by court orders and to act in bad faith. See Welch v. Frederickson, 2008 WL 2185213, *2-3 (D. Or. 2008), citing Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc., 682

F.2d 802, 806 (9th Cir. 1982)).  See also Henry v. Gill Indus., 983 F.2d 943, 946-48 (9th Cir. 1993); Anheuser-Busch v. Natural Beverage Distributors, Inc., 69 F.3d 337, 348 (9th Cir. 1995).[4]  In the instant case, Defendants have demonstrated contempt for the legal process since this lawsuit was initiated.  They have repeatedly violated court orders, up to and including the Preliminary Injunction.  Nothing this Court has done has compelled Defendants to act in good faith.  Unless the answer is stricken, the counterclaim is dismissed, and permanent injunctive relief and default judgment issue, Defendants will continue their pattern of bad faith and disregard for the rules and orders of this Court.

         3.     *Defendants Do Not Have the Means to Pay Monetary Sanctions.*

According to Defendants, they do not have the means to pay monetary sanctions.  Thus, while the imposition of monetary sanctions may theoretically be a burden upon them, they will avoid that burden by simply not paying the fine levied against them and by remaining in India.  As such, Plaintiff requests the imposition of more severe sanctions, as identified above, in addition to the imposition of monetary sanctions.

         4.     *Defendants Willfully Disregarded the Preliminary Injunction.*

Defendants agent, Happy Hours, willfully disregarded the Preliminary Injunction.  After all, it (1) submitted a document in open court in India accusing Filmkraft of infringing upon the copyright to the *Kites* motion picture, even though Filmkraft owns that copyright; (2) threatened to sue Filmkraft to stop release of the film in a prominent Indian film magazine; and (3) followed through on that threat and sued Filmkraft in India to stop release of the film.  None of these actions were accidental.  Rather, each was an intentional and concerted action designed to halt the largest release and distribution for an Indian movie in history.  As such, Plaintiff Filmkraft respectfully requests that this Court issue an order to show cause on an emergency basis.

## IV.    CONCLUSION

As evidenced above, Defendants Spektrum, Raj Shah, and Bina Shah are intentionally violating the Preliminary Injunction entered by this Court.  Their conduct is a continuation of their

---

[4] These two cases deal with striking an answer and counterclaim based upon repeated failures to abide by discovery orders.

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

previous bad acts throughout this case and serves as confirmation that they will never respect the rules and orders of this Court. As such, Plaintiff Filmkraft respectfully requests that this Court issue an order to show cause as to why not only monetary sanctions but also severe sanctions should not issue against Defendants, including (1) the striking of Defendants' Answer; (2) the dismissal of Defendants' Counterclaims; (3) the issuance of Default Judgment against Defendants; (4) the issuance of a Permanent Injunction against Defendants; and (5) forbidding Defendants and their members, managers, employees, partners, attorneys, affiliates, successors, and/or agents, including Happy Hours, from claiming any ownership in the copyright to *Kites*.

Dated the 20th day of May, 2010.

GREENBERG TRAURIG LLP

_____
Mark G. Tratos (Bar No. 1086)
Donald L. Prunty (Bar No. 8230)
Ronald D. Green Jr. (Bar No. 7360)
3773 Howard Hughes Pkwy, Suite 400 North
Las Vegas, NV 89169

Counsel for Plaintiff
FilmKraft Productions India PVT Ltd.

# CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2010, I served the foregoing **EMERGENCY MOTION FOR AN ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT OF COURT FOR THEIR VIOLATIONS OF THE PRELIMINARY INJUNCTION** on:

Spektrum Entertainment, Inc.,
Raj Shah and Bina Shah
401 Seaspray Janki Kutir Juhu Church Road Juhu
Mumbai, MH 400049
India

by causing a full, true, and correct copy thereof to be sent by the following indicated method or methods, on the date set forth below:

☒ by mailing in a sealed, first-class postage-prepaid envelope, addressed to the last-known address of Plaintiffs, and deposited with the United States Postal Service at Las Vegas, Nevada.

☐ by hand delivery.

☐ by sending via overnight courier in a sealed envelope.

☐ by faxing to the attorney at the last-known fax number.

☐ by electronic mail to the last known e-mail address.

_____
An employee of Greenburg Traurig, LLP